## Semmens, Appellant, *v.* Semmens.

378

Argued April 26, 1939.

Before KELLER, P. J., CUNNING-
HAM, BALDRIGE, STADTFELD, PARKER, RHODES and
HIRT, JJ.

*A. M. Oliver,* of *Dipple & Oliver,* for appellant.

*Elder W. Marshall,* with him *Paul G. Schaefer,* and
*Reed, Smith, Shaw & McClay,* for appellee.

OPINION BY KELLER, P. J., July 13, 1939:

This was an action for divorce from bed and board
on the ground that the respondent had maliciously
abandoned his family.[1]

As is the practice in Allegheny County, the evidence
was heard in court by a judge of the court of common
pleas. He found against the libellant on the question
of abandonment, and entered a decree dismissing the
libel. The libellant appealed.

_____
[1] Act of May 2, 1929, P. L. 1237, sec. 11(a), 23 PS sec. 11.(a),
a re-enactment, in this respect, of Act of February 26, 1817, 6
Sm. L. 405.

A review of the evidence in the case leads us to agree with the court below.

While the cause alleged in the libel, pursuant to the statute authorizing a divorce from bed and board, to wit, "that respondent had maliciously abandoned his family," is not exactly the same as the "wilful and malicious desertion" for which a divorce from the bonds of matrimony may be granted, it is the practical equivalent of the latter, and is certainly no less severe in its requirements, and is to be applied no less strictly.

It is well settled that where a husband and wife consent to live separate and apart from each other, or agree to a separation, before either can charge a wilful and malicious desertion by the other, he or she must first, in good faith, take some unequivocal step looking to a resumption of the marriage relation, which is rejected by the other: *Weisbrod v. Weisbrod,* 103 Pa. Superior Ct. 267, 156 A. 542; *Ward v. Ward,* 117 Pa. Superior Ct. 125, 131, 177 A. 515.

The same principle should apply with respect to a divorce from bed and board on the ground of malicious abandonment. A wife who agrees that her husband may live separate and apart from her, cannot charge a malicious abandonment until she has sought in good faith a resumption of the marriage relation and has been rebuffed without cause, and until the husband has failed to provide for her maintenance and support for such a length of time as to show an intention on his part to abandon her or otherwise has definitely manifested such an intention.

In the present case the husband left the common domicile about August 1, 1930. On January 2, 1931 he and his wife entered into a written agreement by which both parties agreed that because of marital differences they had separated and had been living separate and apart, and covenanted that each of them should live at such place or places as he or she should see fit, free from any interference or molestation from the

other.  The agreement provided that the husband should pay his wife for her support and maintenance and for the support, maintenance and education of their sixteen year old daughter, Alice Ann, the sum of $300 per month in advance, on the first day of each month.  He also agreed to pay existing bills contracted by his wife, not to exceed $3000, with a clause protecting him in case her bills exceeded $3000.  Each party released and surrendered his or her right in the estate of the other, and accepted the provisions of the agreement in full settlement and satisfaction thereof.  It also provided for a reduction of said monthly payments in case the wife remarried or the daughter married or attained the age of twenty-one years.

On August 31, 1935, the daughter in the meantime having become twenty-one years old or almost that age, the parties entered into a second agreement by the terms of which the husband agreed to pay his wife the sum of one hundred and fifty dollars per month in advance on the first day of each month, and to pay the existing usual and ordinary bills contracted by her prior to August 1, 1935, with the same clauses as were in the first agreement about each releasing and surrendering his or her right in the estate of the other and each being free to live where he or she saw fit, without interference or molestation from the other. This second agreement further provided that it should remain in force and effect for a period of two years, that is, up to and until September 1, 1937.  The husband made all the payments as they fell due under the second agreement.

It is clear that up to this time, that is, to September 1, 1937, there was no evidence of a malicious abandonment by the husband; and the evidence showed that during the period they had lived apart by agreement he had paid his wife $17,700.  The daughter is now living with her father.

On August 18, 1937, before the period fixed by the

second separation agreement had expired, the wife presented her petition for a subpoena in divorce, and on August 27, 1937 filed this libel, and on October 11, 1937 presented her petition for alimony pendente lite, on which the court on December 17, 1937, ordered her husband to pay her $150 a month beginning as of October 11, 1937, which was done.

Libellant presented no proof that she ever sought a reconciliation with her husband or asked for a resumption of the marital relation. The husband, on the contrary, testified that he had frequently asked his wife to live with him at Turtle Creek and that she had refused and insisted on a continuance of the agreement.

No good purpose would be served by a review of the testimony. It wholly fails to establish a malicious abandonment of the wife by the husband. In fact, the libel was filed before the expiration date of the second agreement. The payment which she received from him on August 1, 1937 paid what was due her under the agreement up to September 1, 1937. An *abandonment, —a malicious abandonment—*, cannot be founded on any such state of facts.

The decree is affirmed at the costs of the appellant.